513 A.2d 525

Warren A. Marweg, t/a Northway Ice Company, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued May 16, 1986, before Judges BARRY and PALLADINO, and Senior Judge ROGERS, sitting as a panel of three.

*Patrick Clair,* with him, *Dennis E. Bires* and *William Andrews,* for petitioner.

*Robert P. Coyne,* Deputy Attorney General, with him, *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE BARRY, July 29, 1986:

This appeal results from an order of the Board of Finance and Revenue (Board) which sustained the decision of the Department of Revenue, Board of Appeals, imposing a use tax deficiency on the petitioner, Warren A. Marweg, t/a Northway Ice Company, Inc. (petitioner).

The relevant facts have been stipulated and we adopt them for the purpose of this opinion. Petitioner is engaged in the business of making ice in substantial quantities and selling it at wholesale to a variety of customers. The operation produces approximately twenty-five tons of ice per day for sale in blocks, cubes and crushed form.

Pursuant to an audit conducted in 1979, petitioner was issued an assessment by the Department of Revenue for a use tax deficiency on the machinery involved in the making of the ice. Petitioner, in response, filed a Petition for Reassessment with the Department but was unsuccessful in having the assessment overturned.[1] After a further appeal taken to the Board was likewise un-

---

[1] Petitioner was successful, however, in having struck from the assessment penalties which had been imposed in conjunction with the tax deficiency assessment.

successful,[2] the petitioner initiated the present petition for review.

The sole question involved in this appeal is whether the production of ice, as undertaken by the petitioner, constitutes "manufacturing" for purposes of the use tax provisions of the Tax Reform Code of 1971 (Code).[3] Petitioners have consistently asserted that their activities *do* constitute manufacturing. This argument is premised on the portion of the Code excluding from the classification of taxable uses:

> (B) The use or consumption of tangible personal property, including but not limited to machinery and equipment and parts therefor and supplies or the obtaining of services described in subclauses (2), (3) and (4) of this clause directly in any of the operations of—
>
> (i)[t]he manufacture of personal property
>
> . . . .

Section 201(o)(4)(B)(i) of the Code, 72 P.S. §7201(o)(4)(B)(i). "Manufacture," in turn, is defined in the Code as follows:

> The performance of manufacturing, fabricating, compounding, processing or other operations, engaged in as a business, which place any personal property in a form, composition or character different from that in which it is acquired whether for sale or use by the manufacturer, and shall include, but not [be] limited to—[five enumerated categories].

Section 201(c) of the Code, 72 P.S. §7201(c).

The Board's decision in the present case was grounded upon Sales and Use Tax Regulation 225. That regula-

---

[2] The Board issued a one-page, summary order sustaining the decision of the Board of Appeals. We thus infer the Board to have adopted the former's reasoning in the course of its affirmance.

[3] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§7101-10004.

tion, which recites the definition of "manufacture" reproduced in the foregoing paragraph, includes as its own second paragraph the following refinement:

> Mere changes in chemical composition or slight changes in physical properties are not sufficient. For example, the C Company, as its business operations, takes coffee beans, and thereafter, by mechanical and hand labor cleans them, removes the outer skins and roasts the beans. The roasted coffee . . . is not a manufactured product, notwithstanding the fact that there has been a change in color, weight and size of the bean.

61 Pa. Code §32.1 (definitional section). After acknowledging this regulatory language, the Board in its decision reaffirmed its "consistent [holding] that the making of ice from water does not constitute a substantial change in form, composition or character sufficient to qualify as 'manufacturing'. . . ." *Board of Appeals* Decision at 3. Petitioner maintains that the regulation is inapplicable, arguing that "[c]ertainly ice is in a different . . . form than water, has a distinctive name, and has uses far different than the water from which it is made." *Brief for Petitioner* at 4. While this latter notion may be true, our decisions construing the concept of "manufacture" support both the premise of the regulation[4] and the Board's application of it to the production of ice.

The pivotal doctrinal notion in this regard is, succinctly stated, that, before "manufacturing" can be determined to have existed, the process at issue must "involve [] more than 'merely a superficial change.' " *Van Bennett Food Co. v. City of Reading*, 87 Pa. Commonwealth Ct. 30, 34, 486 A.2d 1025, 1027 (1985)

---

[4] Indeed, the second paragraph of the regulation draws its facts from *Commonwealth v. Lowry-Rodgers Co.*, 279 Pa. 361, 123 A. 855 (1924).

(dealing with processing and production of food products); *Commonwealth v. Weiland Packing Co.,* 292 Pa. 447, 450-51, 141 A. 148, 150 (1928).[5] Especially persuasive in precisely this respect is our Supreme Court's adoptive language in *Commonwealth v. American Ice Co.,* 406 Pa. 322, 178 A.2d 768 (1962), in which it was held that the production of ice was *not* manufacturing for purposes of the Capital Stock Tax Act:

> [T]he process of manufacture brings about the production of some new article by the application of skill and labor to the original substance or material out of which such new product emerges. If, *however, there is merely a superficial change in the original materials* or substances and no substantial and well-signaled transformation in form, qualities, and adaptability in use, quite different from the originals, it cannot properly and with reason be held that a new article or object has emerged. . . . Nor is it of legal significance . . . that the operations thus conducted require large and extensive plants . . . and intricate machinery. . . .

406 Pa. at 326-27, 178 A.2d at 770 (quoting *Armour & Co. v. Pittsburgh,* 363 Pa. 109, 116, 69 A.2d 405, 408 (1949) (construing "manufacture" in context of Pittsburgh mercantile license tax)). In recognition of this principle, the *American Ice* Court concluded:

---

[5] *See also General Foods Corp. v. Pittsburgh,* 383 Pa. 244, 251-52, 118 A.2d 572, 576 (1955) *(held,* production of decaffeinated and instant coffee and tapioca *not* "manufacturing" for purposes of mercantile license tax, because such product had not "gone through a substantial transformation in form, qualities, and adaptability in use . . . so that a new article or creation has emerged."); *Electric Welding Co. v. Pittsburgh,* 394 Pa. 60, 64, 145 A.2d 528, 530 (1958) *(held* welding company's process of cutting, bending and twisting steel products *not* "manufacturing" because such changes were "purely superficial").

[Ice] is still what it was originally—water. In fact, if it is allowed to remain in a warm temperature it reverts to water without any human or mechanical interposition. This cannot be said of any product which is generally said to be a manufactured product.

406 Pa. at 329, 178 A.2d at 769.

While it is true that *American Ice* was decided in the context of a different tax,[6] we find the court's analysis with regard to the production of ice to be persuasive and, indeed, controlling. The freezing of water into ice constitutes only superficial change and cannot be con-

---

[6] As recited in the text, *American Ice* was decided under the Capital Stock Tax Act, Act of June 1, 1889, P.L. 420. As explained in *Commonwealth v. Olan Mills, Inc. of Ohio*, 456 Pa. 78, 84 n.7, 317 A.2d 592, 595 n.7 (1974), under that Act there was no definition of "manufacturing"; instead, the "definitional vacuum [was] filled by a *judicial definition* of the term[.]" *Id.* (Emphasis in original.) Because decided in this different context, petitioner challenges the applicability of *American Ice* in the present controversy. *Brief for Petitioner* at 4. We have already held, however, that "the case law and Tax Reform Code definitions of manufacturing are materially identical. . . ." *Genuine Motor Parts of Pennsylvania, Inc. v. Pittsburgh*, 43 Pa. Commonwealth Ct. 434, 436, 403 A.2d 145, 147 (1979). We thus conclude *American Ice* to be entirely persuasive in the case under consideration.

It is true in this respect that the Supreme Court in *Commonwealth v. Air Products and Chemicals, Inc.*, 475 Pa. 318, 324, 380 A.2d 741, 744 (1977), declared that *American Ice*, as a case decided under the Capital Stock Tax Act, was "inapposite" in determining whether the taxpayer's operation constituted manufacturing for purposes of the Tax Act of 1963 for Education, the forerunner of the Code. We note, however, that the Court said only that "the same activity *may* constitute manufacturing for purposes of the use tax but not for another tax. . . ." 475 Pa. at 324 n.9, 380 A.2d at 744 n.9. We thus do not believe that the *Air Products* Court was declaring, as suggested by petitioner, that *American Ice* is authority only in cases decided under the Capital Stock Tax Act.

sidered "manufacturing" in the context of that term's ordinary and general meaning. *See Commonwealth v. Berlo Vending Co.*, 415 Pa. 101, 104, 202 A.2d 94, 96 (1964) ("manufacturing," as used in legislation is to be given "its ordinary and general meaning").

We find no merit in petitioner's argument that the result of our Supreme Court's holding in *Commonwealth v. Air Products and Chemicals, Inc.*, 475 Pa. 318, 380 A.2d 741 (1977), compels reversal of the use tax assessment. In *Air Products* the taxpayer was engaged in the making and selling of industrial and medical gases, including oxygen, nitrogen and argon. This operation was conceded by the Commonwealth to *be* manufacturing, but it had nonetheless attempted to assess the taxpayer's "customer station[s,] which execute[d] the last step of the process—transforming the liquid product to a gas with the proper temperature and pressure . . ."; this process was asserted by the Commonwealth not to be manufacturing. Rejecting this assertion, the Court held that this stage of the operation *did* constitute manufacturing, because, pertinently, "the result of the process which the liquid product undergoes in the customer station is to place it 'in a form, composition or character different from that in which it is acquired.' " 475 Pa. at 324, 380 A.2d at 744.

Seizing upon this holding, petitioner declares that "[t]here is absolutely no basis in fact or law to discriminate between the change from a liquid to a gaseous phase and the change from a liquid to a solid phase [*i.e.*, the making of ice]." We reject this assertion. The process involved in *Air Products*, even in its final stage, embraced a procedure infinitely more involved than the mere freezing of water. The Supreme Court has specifically identified the process of making ice as causing a superficial change, and we do not believe that *Air Products* can reasonably be interpreted to abrogate that conclusion.

Based upon the foregoing, the Board is affirmed. Accordingly, pursuant to the stipulation of both parties, the petitioner is directed to remit forthwith to the Department of Revenue the use tax deficiency in the amount of $4,551.30.

### ORDER

Now, July 29, 1986, unless exceptions are filed within thirty days, the order of the Board of Finance and Revenue, No. RST-4066, dated January 16, 1981, is affirmed. Petitioner is directed to remit forthwith to the Department of Revenue the use tax deficiency in the amount of $4,551.30.

### AMENDED ORDER

AND NOW, August 5th, 1986, the order entered on July 29, 1986 in the above captioned matter is amended to reads as follows:

Unless exceptions are filed within thirty days, judgment is entered in favor of the Commonwealth of Pennsylvania in the amount of $4,551.30.