527 A.2d 600

Ski Roundtop, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued April 21, 1987, before Judges CRAIG and DOYLE, and Senior Judge BARBIERI, sitting as a panel of three.

*Ronald L. Hershner, Blakey, Yost, Bupp & Schaumann,* for petitioner.

*Bryan E. Barbin,* Deputy Attorney General, with him, *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, June 15, 1987:

In this consolidated appeal, Ski Roundtop, Inc., Petitioner, petitions for review from three decisions of the Board of Finance and Revenue (Board) denying its petition for refund of capital stock taxes for its tax years ending March 31 of 1977, 1978, and 1979. The Board rejected Roundtop's claim that equipment utilized in snowmaking for its ski resort was engaged in "manufacturing" within the meaning of the manufacturing exemption for imposition of the capital stock tax. We affirm.

Roundtop is a Pennsylvania corporation that operates two ski resorts, Ski Roundtop and Ski Liberty, within the Commonwealth. Section 602 of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7602, imposes upon domestic corporations an annual tax, hereinafter referred to simply as the Capital Stock Tax, on the value of the capital stock of such corporations at the rate of ten mills. Section 602 was amended in 1983 to provide for a minimum capital stock tax of $75.00. *See* Act of December 23, 1983, P.L. 370. The statute did, however, exempt certain assets from the imposition of the Capital Stock Tax. The exemption pertinent to the case at bar was Section 602's exemption of assets engaged in manufacturing from the imposition of the Capital Stock Tax. The pertinent portions of Section 602, as it existed during the tax years in question, provided:

Provided, That the provisions of this section [72 P.S. §7602] shall not apply to the taxation of the capital stock of corporations, limited partnerships and joint-stock associations organized for manufacturing, processing, research or development purposes, which is invested in and actually and exclusively employed in carrying on manufacturing, processing, research or development

within the State, . . . , but every corporation, limited partnership or joint-stock association organized for the purpose of manufacturing, processing, research and development . . . shall pay the State tax of ten mills herein provided, upon such portion of its capital stock, if any, as may be invested in any property or business not strictly incident or appurtenant to the manufacturing, processing, research or development business, . . . , it being the object of this proviso to relieve from State taxation only so much of the capital stock as is invested purely in the manufacturing, processing, research or development plant or business.

While the Tax Reform Code of 1971, specifically Section 601, 72 P.S. §7601, relating to definitions and reports, does not define the term "manufacturing" as used in Section 602, our appellate courts have set forth a judicial determination. In *Commonwealth v. Weiland Packing Co.*, 292 Pa. 447, 141 A. 148 (1928), the Pennsylvania Supreme Court stated that:

[T]he process of manufacture brings about the production of some new article by the application of skill and labor to the original substance or material out of which a new product emerges. If however there is merely a superficial change in the original materials or substances and no substantial and well signalized transformation in form, qualities and adaptability in use, quite different from the originals, it cannot properly and with reason be held that a new article or object has emerged—a new production been created.

*Id.* at 450, 141 A. at 149. *See also Armour and Co. v. Pittsburgh*, 363 Pa. 109, 116, 69 A.2d 405, 408-409 (1949). Thus, in *Kirks Milk Products, Inc. v. Commonwealth*, 58 Pa. Commonwealth Ct. 230, 427 A.2d 688

(1981) (en banc), President Judge CRUMLISH exhaustively reviewed Pennsylvania case law construing the manufacturing exemption from the Capital Stock Tax and noted that Pennsylvania courts have consistently held that a two-part test must be met for an activity to qualify as "manufacturing" for purposes of the Capital Stock Tax exemption. Thus, to qualify as "manufacturing" for purposes of the Capital Stock Tax exemption, an activity must (1) involve the application of skill, science and labor to the original substance or material that (2) produces some new article or product quite different from the originals. Using this two-part test, we are compelled to agree with the Commonwealth that Roundtop's snow-making does not constitute "manufacturing" within the meaning of the exemption from the Capital Stock Tax found in 72 P.S. §7602.

The first prong of the *Kirks Milk Products* test is whether the activity requires the application of skill, science and labor to the original substance or material. We have no trouble finding that Roundtop's snow-making activity satisfies this test. The snow-making activity requires the collection of water that is collected and pumped to various posts along a ski trail. The water is then pressurized to a pressure of between two to three hundred pounds per square inch. Additionally, the activity requires the use of air that is pressurized to one to two hundred pounds per square inch and cooled to approximately sixty degrees Fahrenheit. In order to make snow from this pressurized air and water combination, the pressurized water is fed into the chamber of a snow gun. The cooled, pressurized air also enters the gun at a controlled rate and combines with the water. The air immediately decompresses, returning to atmospheric pressure, and cools rapidly in the process. This rapid cooling causes the water in the gun chamber to mist and is frozen into water crystals that are carried out of

the gun by the force of the air and water. The type of snow desired can be tailored by Roundtop by the use of various snow guns. Additionally, this technology enables Roundtop to make snow where the outside temperatures are above freezing. Thus, we agree with Roundtop that there is an application of skill, science and labor to a much greater extent necessary than the ice-making cases that have been decided earlier. *See e.g., Commonwealth v. American Ice Company*, 406 Pa. 322, 178 A.2d 768 (1962); *Warren Marweg, t/a Northway Ice Company, Inc. v. Commonwealth*, 99 Pa. Commonwealth Ct. 282, 513 A.2d 525 (1986).

The second prong of the *Kirks Milk Products* test is that the end result of the activity must produce a new product or an article that is substantially different from the original. Here, we conclude that the man-made snow that is the end result of Roundtop's activity is not a new product nor is it substantially different from the original material, water. There can be no question that the "snow" made by Roundtop's pressurized water and air is for all intents and purposes the solid state of water. The application of cooled, pressurized air with its rapid cooling of the water mist permits the water to freeze in individual crystals rather than in larger masses as was the case in *American Ice Company* and *Northway Ice Company*. While we recognize that this form of ice crystal is different than snow formed from chipping or shaving blocks of ice, the essential fact is that Roundtop's man-made snow is still only frozen water. As such, it is not substantially different from its original material, liquid water, and, in fact, will naturally revert to the original material if left in above-freezing temperatures for any appreciable period of time. This same conclusion was reached by the Pennsylvania Supreme court in *American Ice* when it concluded:

[Ice] is still what it was originally-water. In fact, if it is allowed to remain in a warm temperature

it reverts to water without any human or mechanical interposition. This cannot be said of any product which is generally said to be a manufactured product.

406 Pa. at 329, 178 A.2d at 769. Thus viewed, the end product, while admittedly more useful to the skiing industry than liquid water or mere ice, does not satisfy the second prong of the *Kirks Milk Products* test and the snow-making activity does not constitute "manufacturing" for purposes of the Capital Stock Tax.

In view of the foregoing, we shall affirm the Board's decisions and orders.

### ORDER

NOW, June 15, 1987, unless exceptions are filed within thirty days, the claims of Ski Roundtop, Inc., for a refund of Capital Stock Taxes in the amount of $1,826.36 for the tax year ending March 31, 1977; $4,029.08 for the tax year ending March 31, 1978, and $4,465.11 for the tax year ending March 31, 1979, are hereby denied and the orders of the Board of Finance and Revenue at Docket Nos. C-7414, C-7415, and C-7416, dated March 30, 1982, are affirmed.