553 A.2d 928

**SKI ROUNDTOP, INC., Appellant,**

v.

**COMMONWEALTH of Pennsylvania, Appellee.**

Supreme Court of Pennsylvania.

Argued May 11, 1988.

Decided Feb. 3, 1989.

Ronald L. Hershner, York, for appellant.

Bryan E. Barbin, Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS, and STOUT, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

FLAHERTY, Justice.

Pennsylvania imposes a capital stock tax upon certain business entities, but exempts from taxation those "orga-

nized for manufacturing, processing, research or development purposes...." The Capital Stock Tax Act of March 4, 1971, P.L. 6, No. 2, art. VI, § 602, 72 P.S. § 7602. The issue presented in this case is whether Ski Roundtop, the taxpayer, should be partially exempted from the capital stock tax under the manufacturing exemption on the theory that some of its otherwise taxable assets are used in a manufacturing process.

The taxes at issue concern the years 1977 through 1979. Ski Roundtop paid its capital stock taxes for these years, but thereafter filed timely petitions for partial refunds, claiming that the assets used for making snow were engaged in a manufacturing activity and were, therefore, exempt from the capital stock tax. The Board of Finance and Revenue refused the taxpayer's petition for refund on the ground that making snow is not manufacturing. Ski Roundtop then filed timely petitions for review with Commonwealth Court. On June 15, 1987, a three-judge panel of Commonwealth Court denied the taxpayer's request for a refund, again on the ground that snow-making activity is not manufacturing, 106 Pa.Cmwlth. 608, 527 A.2d 600. Commonwealth Court dismissed the taxpayer's exceptions and Ski Roundtop filed a timely notice of appeal to this Court pursuant to Pa.R.A.P. 1101(a)(2) and 42 Pa.C.S. § 723(b).

The relevant facts are that Ski Roundtop makes snow by the use of machinery which combines pressurized air and water in the nozzle of a snow gun. As the air decompresses, it cools, freezing the water with which it is mixed into water crystals. These crystals attract moisture from the air as they are sprayed from the guns, building larger crystals which form man-made snow. The water for this operation is pumped from collecting pools at the base of the slopes through underground lines to snow gun nozzles placed at seventy-five foot intervals along each ski trail. Pressurized air is also pumped to each snow gun nozzle through underground lines from large compressors located at the base of the mountain. Using these snow guns,

trained workers walk the trails and make adjustments to the snow guns so as to direct the correct amount and placement of snow on the trails. Different types of snow, e.g., heavy, dense snow or light fluffy snow, may be produced in the snow guns, depending on what is required by the steepness and condition of the various slopes. Ski Roundtop management decides the amount, placement, and timing of artificial snow to be produced by the machines. Approximately one million gallons of water are used in a full day's operation, in addition to large amounts of electricity to run the compressors and pumps.

■ Although the manufacturing exemption from the capital stock tax has been in existence for nearly 100 years, it is not statutorily defined. We must turn, therefore, to the caselaw for an understanding of the term. The definition of "manufacturing" as used in our caselaw has been well summarized in *Bindex Corp. v. City of Pittsburgh*, 504 Pa. 584, 587–88, 475 A.2d 1320, 1322 (1984):

> In *Philadelphia School District v. Parent Metal Products, Inc.*, 402 Pa. 361, 167 A.2d 257 (1961) we [stated] ... that "manufacturing":
>
>> ... [c]onsists in the application of labor skill to material whereby the original article is changed into a new, different and useful article ... Whether or not an article is a manufactured product depends upon whether or not it has gone through a substantial transformation in form, qualities and adaptability in use from the original material, so that a new article or creation has emerged ... If there is merely a superficial change in the original materials, without any substantial and well signalized transformation inform [sic], qualities and adaptability in use, it is not a new article or new product ...
>
> *Id.*, 402 Pa. at 364, 167 A.2d at 258–259.

*       *       *       *       *       *

As is evident, the concept underlying the definition is the transformation of material or things into something different from that received. The difference cannot be a

superficial change that does not alter or change the thing. For example, a cosmetic change performed merely to facilitate the ease of handling, storing, packing or shipping the product or material does not constitute manufacturing. What is required is that the basic materials or goods be given a new identity by the current producer, one which can be easily traced to such producer. This identity must be the product of skill and labor. Skill involves education, learning, experience or knowledge one acquires in a particular business, trade or profession; while labor is the physical characteristics and methods utilized to employ one's skills. When labor is used in conjunction with skill to produce a different product than the original, one with a new identity, manufacturing has occurred.

(Footnote omitted.)

*Bindex* and the cases which preceded it can be summarized as requiring the following: (1) the application of labor and skill (2) which changes a material (3) substantially (4) into a new, different and useful item.

■ The Commonwealth argues that because snow is only a temporary state of water, the water has not undergone a substantial change, and thus no manufacturing has occurred, citing *Commonwealth v. American Ice Co.*, 406 Pa. 322, 178 A.2d 768 (1962). The Court in *American Ice* stated:

Ice is not a new article. It is still what it was originally —water. In fact, if it is allowed to remain in a warm temperature it reverts to water without any human or mechanical interposition. This cannot be said of any product which is generally accepted to be a manufactured product. A table or a chair remains a table or a chair. It may, through use or abuse, be reduced to kindling wood, but it never goes back to being a tree.... [T]he new shape which we find in a manufactured article must be a permanently new shape. As already stated, water may at any moment revert to its original form. If the making of

ice *per se* constituted manufacture then it could be said that the Arctic Zone is a vast ice factory.

*Id.*, 406 Pa. at 329–30, 178 A.2d at 771–72. While the Commonwealth concedes that *American Ice* does not concern the production of snow, it asserts, nonetheless, that the cases are fundamentally similar in that both concern products which are essentially frozen water. The Commonwealth also argues that exemption from taxation is to be construed against the taxpayer, citing 1 Pa.C.S. § 1928(b)(5) and *Commonwealth v. Deitch Co.*, 449 Pa. 88, 295 A.2d 834 (1972), and that the legislative purpose does not support the taxpayer's claim.

Ski Roundtop, on the other hand, argues that its snow-making activity is significantly different from ice-making, and that it has met the criteria mentioned earlier for manufacturing. With respect to manufacturing criteria, Commonwealth Court found that Ski Roundtop applied the requisite skill and labor to the snow-making activity, but that the snow produced by this activity was not a new product substantially different from the original material, which Commonwealth Court identified as water: "the essential fact is that Roundtop's man-made snow is still only frozen water."

We agree with Commonwealth Court that Ski Roundtop's snow-making activity requires skill and labor. The skill involves a knowledge of meteorological conditions, of the functioning of pressurized snow-making machinery, and of the timing and use of this machinery with respect to weather and slope conditions. The labor consists of the maintenance and operation of the machinery in such a way that the cooled, pressurized air and water mixture forms snowflakes, and in directing the snow to areas where it will be useful to skiers.

We disagree, however, that the original material from which the taxpayer's snow is made is only water. Without pressurized air, cooled to the proper temperature and then depressurized as it is mixed with water, the snow could not be made. It is our view, therefore, that pressurized air, as

well as water, is a material which is physically, though not chemically, combined with water to produce snow. The original materials, therefore, are water and pressurized air, not water alone.

This conclusion is significant because one must identify the original materials used to make a product before one can determine whether these materials are substantially changed into a product which has a new and different use from the original materials. It also relates to whether taxpayer's product is essentially a form of ice such that taxpayer's activity is controlled by prior cases concerning ice-making.

As to the first question, we believe that taxpayer's snow is substantially different from the materials from which it is made, air and water. Skiers cannot glide on air, and if they use their skis on water, it would not be while descending a mountain. The conclusion seems inescapable that man-made snow is substantially changed from its original materials in such a way that the resulting material is suitable for a new and different use from the materials from which it was made.

Concerning the question of whether this case is controlled by *American Ice*, the rationale of *American Ice* was that the taxpayer's ice-making activity did not require skill, and secondly, that the product—ice—was not regarded as a manufactured article because ice does not retain its form permanently. The present case is distinguishable from *American Ice* with respect to the labor and skill required, since we have determined that the taxpayer's snow-making activity involves the requisite skill and labor, but it is not distinguishable with respect to the permanency of the product. Both ice and snow melt. Our question, therefore, becomes whether the non-permanent quality of snow requires us to conclude that it is not a manufactured product.

Although *American Ice* added the requirement of permanency to the definition of manufacturing which had otherwise been substantially unaltered for decades, we can discern no basis for this new requirement either in fact or

logic. Many items which would be commonly understood as manufactured, such as ice cream, are impermanent. Moreover, in *Rieck–McJunkin Dairy Co. v. Pittsburgh School District*, 362 Pa. 13, 66 A.2d 295 (1949), this Court expressly held that ice cream making is manufacturing.[1] We reject, therefore, the notion that manufactured products must be permanent, and we conclude, since the taxpayer's snow-making activity meets all of the other requirements of manufacturing, that taxpayer's snow-making activity is manufacturing.

Reversed and remanded to the Board of Finance and Review for a calculation and refund of the taxpayer's overpayment of capital stock taxes for the appropriate years.[2]

NIX, C.J., files a concurring opinion which is joined by PAPADAKOS, J.

LARSEN, J., joins the Majority Opinion and files a concurring opinion.

McDERMOTT, J., files a dissenting opinion which is joined by ZAPPALA, J.

NIX, Chief Justice, concurring.

Any inquiry as to the applicability of an exemption must begin with the underlying recognition that all tax exemp-

[1] The Commonwealth attempts to distinguish *Rieck–McJunkin* from the present case by pointing out that melted ice cream consists of a mixture of components, not a single component. Although this is true, it has nothing to do with the notion of permanence, since both ice cream and snow are impermanent. Furthermore, it does not account for the fact that taxpayer's snow, like ice cream, is also composed of more than one component: viz., pressurized air and water. The only difference between melted ice cream and melted snow, therefore, is that the component parts of melted snow do not all manifest themselves in liquid form. The pressurized air escapes as gas.

[2] Because there is no ambiguity in the application of the facts of this case to the legal definition of manufacturing, we need not address the Commonwealth's other claims, mentioned earlier, which concern presumptions to be applied where the facts of the case do not squarely fit into the relevant definitional requirements. Here, the taxpayer's activities are clearly manufacturing, so considerations of legislative purpose and construction of ambiguous terms or facts are irrelevant.

tions must be traceable to a statutory origin. *See Appeal of Young Men's Christian Association of Pittsburgh,* 383 Pa. 176, 117 A.2d 743 (1955) (affirming on the opinion of the court below reported at 4 Pa. D & C.2d 186). The statutory origin in this instance is found in the Capital Stock Tax Act of March 4, 1971, P.L. § No. 2, art. VI, § 602, 72 P.S. § 7602. Since only the legislature, acting within the limitations of the Constitution, is empowered to determine what property shall be subject to taxation and what shall be immune, *Southwest Delaware County Municipal Authority v. Aston Tp.,* 413 Pa. 526, 198 A.2d 867 (1964), courts are constrained to strictly adhere to the legislative scheme.

Unfortunately the legislature, in creating what has come to be known as the "manufacturing exemption", failed to offer its definition of the term "manufacturing" as used in this context. To fill the void, this Court in 1961 attempted to supply a workable definition for this purpose. *Philadelphia School District v. Parent Metal Products, Inc.,* 402 Pa. 361, 167 A.2d 257 (1961). Since the legislature has not seen fit to further clarify its intended meaning of the term since our definition offered in *Parent Metal Products, Inc.,* it may properly be assumed that the definition given therein comports with legislative intention. *See e.g., In re Obradovich's Appeal,* 386 Pa. 342, 126 A.2d 435, 437 (1956) ("[I]t is the function of a court to construe legislation as it exists and for the legislature to enact whatever changes therein it may deem desirable...."). The essence of that definition is "the application of labor or skill to material whereby the original article is changed into a *new, different and useful* article." *Parent Metal Products, Inc.,* 402 Pa. at 364, 167 A.2d at 258 (Emphasis added). It was further stated that "[w]hether or not an article is a manufactured product depends upon whether or not it has gone through a substantial transformation in form, qualities and adaptability in use from the original material,...." Id., 402 Pa. at 364, 167 A.2d at 258–259.

The transformation of water to snow through the process applied in this appeal is clearly a "different" and "useful"

article under the *Parent Metal Products, Inc.* test. The more difficult question is whether it is a "new" substance within the criteria established. Clearly the housewife who fills the ice trays and places them in the refrigerator to have ice available in the morning is not engaged in manufacturing ice. While the resulting ice is the water in a "different" form, it has not undergone a substantial transformation as would justify concluding that a "new" product had been created. It is true, as Mr. Justice McDermott argues, that snow is but an altered form of water. The distinction is as Mr. Justice Flaherty suggests, that the sophistication involved in the process of altering the form provides the key. I also agree that the element of permanency supplied by our Court in *Commonwealth v. American Ice Co.*, 406 Pa. 322, 178 A.2d 768 (1962), was an unfortunate gratuity not warranted by the statutory language.

Finally, I am constrained to note that the opinion of Mr. Justice Flaherty speaking for the Court does not reflect an adoption of the "flexible approach" urged by Mr. Justice Larsen since his dissenting opinion in *Golden Triangle Broadcasting, Inc., v. City of Pittsburgh,* 483 Pa. 525, 535, 397 A.2d 1147, 1152 (1979) (Larsen dissenting, joined by Mr. Justice Manderino). This view in essence urges that we adopt as a rule of thumb the principle that "any doubts concerning the status of appellants' activity must be resolved in favor of appellants." As previously discussed herein, it is our responsibility to strictly carry out statutory mandate. Having determined the meaning of the term "manufacturing" which has been accepted by the legislature, as evidenced by their inaction since 1961 to offer any attempt to change or modify it, we are bound to apply it in each case without modification. The suggestion that the well established meaning of manufacturing should be adjusted on a case-to-case basis to satisfy a perceived legislative intent to foster manufacturing is, in my opinion, jurisprudentially unsound. If the established definition does not conform to legislative intent, it is the responsibility of the legislature to make that adjustment.

For the reasons expressed herein, I join the opinion of the Court authored by Mr. Justice Flaherty.

PAPADAKOS, J., joins in this concurring opinion.

LARSEN, Justice, concurring.

I join the opinion of the majority, but I write separately to note that my colleagues have adopted the flexible approach which I espoused in *Golden Triangle Broadcasting, Inc. v. City of Pittsburgh,* 483 Pa. 525, 397 A.2d 1147 (1979) (Larsen, J., dissenting).

The *Golden Triangle* case concerned the Local Tax Enabling Act, Act of December 31, 1965, P.L. 1257, § 2, 53 P.S. § 6902 (1972), and the application of the term "manufacturing" to the activities of those in the radio and television broadcasting industry. I would have held that such activity constituted manufacturing, and in support thereof, I stated:

> [I]t is important to remember that the limitation placed by the legislature on the City's authority to tax is intended to encourage the growth of manufacturing in this Commonwealth. The courts, in their development of standards for determining whether or not a particular enterprise is engaged in manufacturing, should be concerned with achieving that legislative objective. To that end, the standards must be flexible and the courts must be willing to adapt the standards to comport with rapid technological and scientific progress. As research and development in countless areas produces techniques and processes that may have been hitherto unheard of, we must not rigidly bind ourselves to outmoded concepts.... As the "Star Trek" era is ushered into our lives, this Court must be prepared to keep its perspectives progressive and its definitions flexible, or else this Commonwealth will fail to acquire modern, technological manufacturing operations.

*Id.,* 483 Pa. at 537–38, 397 A.2d at 1153.

Accordingly, I would also reverse and remand this case to the Board of Finance and Review.

238

McDERMOTT, Justice, dissenting.

To say, as the majority does, that the cooling of water to make ice is not manufacturing, but that the cooling of water to make snow is manufacturing, is a distinction without difference. Either our decision in *Commonwealth v. American Ice Co.*, 406 Pa. 322, 178 A.2d 768 (1962), must be reversed, or this case must be decided consistent therewith.

Since I agree that the making of ice does not constitute "a substantial transformation in form ... [such] that a new article or creation has emerged,"[1] I would not reverse *American Ice Co.;* and, consequently, I cannot agree with the majority that the making of ice in the form of snow constitutes manufacturing.

ZAPPALA, J., joins this dissenting opinion.

1. *Philadelphia School District v. Parent Metal Products, Inc.*, 402 Pa. 361, 367, 167 A.2d 257, 258 (1961).