## Commonwealth v. Wm. Mann Co., Appellant.

[Marked to be reported.]

*Corporation—Meaning of term " organized" under Act of 1874.*

Under the earlier statutes, a corporation was "organized" when its officers were appointed and took upon themselves the burden of their offices, after the incorporation; but the word "organized," as used in § 38, clause 4, of the General Corporation Act of April 29, 1874, P. L. 100, is used in a more comprehensive sense, as including incorporation. Under that Act the appointment of officers becomes effective *eo instanti* with the incorporation and neither could take place without the other.

*Meaning of term " organized" under Act of 1889.*

Under the Act of June 1, 1889, P. L. 420, providing for the exemption from taxation of certain corporations organized exclusively for manufacturing purposes, the word "organized" refers to the incorporation and not to the exercise of its functions in business operations.

*Taxation—Exemption—Manufacturing corporations—Apportionment.*

Hence a corporation organized exclusively for manufacturing purposes and actually carrying on manufacturing within the state during the tax year, is exempt from state tax, under the Act of 1889, to the extent of its property so used, although also engaged in other business.

But the property or capital stock used for purposes other than manufacturing is not exempt and an apportionment will be made for purposes of taxation.

Argued May 31, 1892. Appeal, No 18, May 3, 1892, from judgment of C. P. Dauphin Co., Jan. T., 1892, No. 385, on

trial by court without jury, in appeal from tax settlement, for tax on capital stock of manufacturing corporation.    Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Defendant's specifications of appeal were in substance as follows : (1) Section 21 of the Act of June 1, 1889, P. L. 420, exempt manufacturing corporations from tax on capital stock, and appellant is exempt under said Act.    (3) If taxable at all appellant is taxable only on the proportion, if any, invested outside of its manufacturing business.    (4) Section 21 of the Act of 1889 conflicts with art. IX, § 1, of the Pa. constitution, prescribing uniformity of taxation.    (5) Said section conflicts with art. XIV, § 1, of the amendments to the U. S. constitution.

The court found the facts to be as follows, in an opinion by McPHERSON, J., reported in 1 Dist. R. 345.

" 1.    The defendant is a corporation of this state, chartered April 11, 1888, under the General Corporation Act of 1874, for the purpose of manufacturing blank books and stationery, printing, lithographing, and selling the products of such manufacture : P. L. 1889, p. a54.    It does not engage in the brewing or distilling of spirituous or malt liquors, and it does not enjoy and exercise the right of eminent domain.

" 2.    The defendant has found it an advantage to its business, and a desirable method of increasing and extending the sale of its own manufactures, to invest a portion of its capital stock in the purchase and sale of goods manufactured by others. During the tax year of 1890 $45,000 of its capital stock were thus invested.

" 3.    The paid-up capital stock of the defendant is $350,000, upon which, during the year ending the first Monday of November, 1890, it declared a dividend of 12½ per cent.    The settlement in question taxes the capital stock at the rate of 6¼ mills.

" 4.    With the exception of the $45,000 above referred to, all of its capital stock is invested in the manufacturing plant, buildings, machinery, etc., which it occupies and uses exclusively for manufacturing purposes, or in merchandise manufactured by it, and on hand awaiting sale, in process of manu-

facture, or in cash on hand. Its business is carried on and its property is found in the city of Philadelphia."

The court argued to the effect that a change was intended by the Act of 1889. The commonwealth's argument in Com. v. Lackawanna I. & C. Co., 129 Pa. 346, 352, suggests the source from which the language of the Act of 1889 is derived. That Act intended to apply a more stringent test than the Act of 1885. Organization applies to the exercise of corporate functions in business: International Nav. Co. v. Com., 104 Pa. 38.

The court, although expressing doubt, re-stated the conclusions as follows:

"1. Section 21 of the Act of 1889 exempts from taxation the whole capital stock of corporations which, during a given tax year, have been engaged in manufacturing and in no other business.

"2. The corporation claiming exemption under this section must, during the given tax year, have actually carried on within this state at least a part of its manufacturing business.

"3. This section taxes the whole capital stock of corporations which, during the given tax year, have carried on two or more businesses, only one of which was manufacturing. In this class, apportionment as heretofore allowed is now forbidden.

"In brief, then, we are of the opinion that the construction above adopted is in harmony with the course of legislation and decision upon this subject, gives to the words used their natural and ordinary meaning, carries out the evident intention of the Legislature to relieve manufactures from the burden of one kind of taxation, and obeys the rule that exemptions from taxation are to be strictly construed.

"Applying the rules above stated to the case in hand, we find as conclusions of law:

"1. The defendant is a manufacturing corporation, actually carrying on manufacturing within the state, but during the tax year of 1890 it was not organized exclusively for manufacturing purposes. (This is also, and in part, a conclusion of fact.)

"2. Its whole capital stock therefore is taxed by § 21 of the Act of 1889."

Exceptions. Defendant filed exceptions alleging error (1-4) in not sustaining the specifications of appeal; (5) in holding the whole capital stock taxable; (6) in directing judgment therefor; (7) in not directing judgment for defendant.

The exceptions were overruled and judgment entered, whereupon defendant appealed.

*Errors assigned* were (1-7) overruling exceptions, quoting them.

*M. E. Olmsted*, with him *John G. Johnson*, for appellant.— Corporations under the Act of 1874, unlike those under previous local Acts, must select their officers and complete their organization, before charters can be granted, and the purpose —the single purpose—must be stated in the application : Act of April 29, 1874, P. L. 74. The purpose of appellant company complied with this Act. The investment of capital in the purchase and sale of goods manufactured by others was in effect found by the court to be incidental to and in aid of the manufacturing business. It was in the line of the legislative exemption, and certainly would not defeat the exemption. The laws of New York and New Jersey favor their corporations by grading the tax according to the percentage of capital stock invested in the state. The proviso to the Act of 1889 was in the same direction. The Act of 1874 provides that iron and steel manufacturing companies shall open mines, etc. They make their own coke or mine their own coal, limestone, etc. Yet clearly the proviso to the Act of 1889 was designed to encourage such corporations.

The proviso to the Act of 1889 excepts from the exemption corporations having the right of eminent domain. The fact that this exception was deemed necessary, indicates that without it the exemption was understood to apply to a manufacturing corporation having the right of eminent domain, which could not belong to a corporation organized exclusively for manufacturing purposes without incidental outside operations.

If the capital invested in aid of the manufacturing business is not exempt, the tax must be apportioned. Apportionment is a part of our tax system : Com. v. Atlantic Refining Co., 2 Pa. C. C. 65; Com. v. Standard Oil Co., 101 Pa. 119; Com. v. Lack. I. & C. Co., 129 Pa. 346 ; Com. v. Mahoning Rolling

Mill Co., Ib. 360. The last two cases were not decided when the Act of 1889 was passed, but their reasoning applies to the Act of 1885. The Lackawanna Co. claimed exemption for its whole capital stock. It was probably to prevent the entire exemption of such corporations that the Act of 1889 changed the phraseology of the Act of 1885.

The Act of 1885 was intended to encourage productive industries: Com. v. Northern Electric Light & Power Co., 28 W. N. 521, 4, 7. The Act of 1889 had the same purpose in view.

The exemption apples only to state tax on capital stock: Hawes Mfg. Co.'s Ap., 1 Mona. 353.

*James A. Stranahan,* Deputy Attorney General, and *W. U. Hensel,* Attorney General, for appellee.—If appellant's contention is correct there is little if any difference in the exemption clauses of the Acts of 1885 and 1889. There was some reason for using the terms employed in the latter Act. The " custom of apportionment" was undoubtedly sought to be abolished by the Act of 1889. The experience of the commonwealth under the Act of 1885 was fresh in the minds of the Legislature. It knew how corporations organized for different purposes had escaped taxation by this custom. The only legitimate construction of the Act of 1889 is to keep those corporations within their proper limits. If their chartered powers are not exclusively for manufacturing purposes and they have not disclaimed or surrendered these powers that are other than manufacturing, they are not exempt, or if they are chartered for partly manufacturing purposes, but invest their stock in other business, they are not entitled to the exemption, as they ought to be held to be doing that for which they are organized to do. The rule adopted should be uniform.

Defendant, to come within the exemption of the Act of 1889, must show that it includes all the purposes covered by the Act of April 7, 1849, and its supplements, passed to encourage manufacturing operations within the commonwealth. By supplement of April 14, 1851, this was extended to the business of printing and publishing.

The Act of 1874, in its mode for the incorporation of companies, adopted this same idea in reference to this class of manu-

facturing industries, and in corporations for profit—second class in § 2, clause 12, P. L. 74, it provided for corporations for the "transactions of a printing and publishing business." This clause and the Act of 1851 unmistakably had reference to the same class of manufacturing. It was simply a printing and publishing business, and applied to the printing and publishing of books and newspapers. Defendant does not come under the class mentioned and intended in either of these Acts. Its charter must have been granted under § 2, clause 18 of the Act of 1874, P. L. 74. If so it was chartered or organized for a different purpose from that set forth in § 12, and it cannot be claimed that it comes within the provisions of the Act of 1851. Applying the principle that exemptions from taxation must be strictly construed, the claim of defendant cannot be allowed under the exemption clause of the Act of 1889. This contention is directly supported in the opinion of this court in Com. v. Northern Electric Light Co., 28 W. N. 521.

This position and the reasons given by the opinion of the court below justifies the judgment.

*Olmsted* and *Johnson,* in reply.—If the Act of 1889 had intended to abolished the custom of apportionment, it would have said so. So, also, as to exemption depending on the investment of the capital and surplus exclusively in the manufacturing business.

Appellant has exercised only such powers as are incidental to the purpose of its organization. They are not *ultra vires :* Morawetz, 365, 7; Forrest v. Ry., 30 Beav. 40; Lyndeborough Glass Co. v. Glass Co., 111 Mass. 315; Dauchy v. Brown, 24 Vt. 197; Seawright v. Payne, 6 Lea 283; Callaway Mining Co. v. Clark, 32 Mo. 304; Moss v. Averell, 10 N. Y. 449–456; Texas, etc., R. R. v. Robars, 60 Tex. 545; Layng v. French Spring Co., Limited, 1 Adv. R. 759.

The exemption of the Act of 1889 is not limited to corporations chartered under any particular section of the Act of 1874, or under other Acts. Clause 18 of § 2 of the Act of 1874 provides for charter of corporations for any manufacturing purpose, including those provided for by prior Acts. The Act of 1849 included just such corporations as that of appellant.

OPINION BY MR. JUSTICE HEYDRICK, July 13, 1892.

The learned court below found that the defendant company was incorporated under the general corporation law of 1874, for the purpose of manufacturing blank books and stationery, printing, lithographing and selling the product of such manufacture, with a capital of $350,000 ; that during the year ended the first Monday of November, 1890, it was actually carrying on manufacturing within this state, but employed $45,000 of its capital in other business, and that within the same year it declared a dividend of twelve and one half per cent upon its capital stock. Upon these findings the court was of opinion that the company did not come within the last proviso to the 21st section of the Act of June 1, 1889, exempting from taxation "corporations, limited partnerships and joint stock associations organized exclusively for manufacturing purposes, and actually carrying on manufacturing within the state," and therefore held it liable to taxation upon its entire capital. The appellant contends that upon the court's finding it was within the proviso, and therefore exempt from taxation, or, if not wholly exempt, that it was at most taxable on that part, only, of its capital which was not employed in manufacturing. This contention raises the question of the proper interpretation of the phrase "organized exclusively for manufacturing purposes;" and a further question of construction of the whole proviso.

To organize is to furnish with organs. An organ is defined to be an instrument or medium by which an action is performed or an object accomplished. The medium by or through which a corporation can alone act or accomplish the object for which it was created is the officers provided for in the law of its being. Hence it is organized when these officers have been appointed and taken upon themselves the burden of their offices; it is then furnished with organs ; endowed with capacity for the functions of life: Webster ; qualified for the exercise of its appropriate functions : A. & E. Encyc. of Law. And this is the sense in which the word "organize" is used in statutes providing for the incorporation of companies for various purposes: Act of Jan. 26, 1849, P. L. 11 § 3 ; Act of Feb. 19, 1849, P. L. 80, § 3; Act of April 16, 1850, P. L. 478, § 7; Act of April 12, 1855, P. L. 217, § 1; Act of March 11, 1857, P.

L. 77, § 3 ; Act of April 8, 1861, P. L. 259, § 1. In clause 4
of § 38 of the corporation Act of 1874, P. L. 100, the word
" organized " is used in a more comprehensive sense, as includ-
ing incorporation, and properly so because the appointment of
officers becomes effective *eo instanti* with the incorporation,
and under that Act neither could take place without the other.
A corporation being thus organized is of course organized for
a purpose, not aimlessly and indefinitely, but necessarily for a
purpose which it has capacity to accomplish. Being the creature
of law it has capacity to accomplish that only which it is express-
ly or by necessary implication authorized by its charter to do :
Commonwealth v. E. & N. E. Railroad Co., 27 Pa. 339. The
defendant's charter authorized it to manufacture blank books
and stationery, and, what may be considered necessary incidents
to that business, to print, lithograph and sell its products.
Nothing more being expressed, everything else was excluded.
It was therefore organized exclusively for manufacturing pur-
poses, and as it was found to have been actually carrying on
manufacturing within the state during the tax year, it was
within the proviso exempting manufacturing companies from
taxation.

But it does not follow that a company which is organized
exclusively for manufacturing purposes and which actually
carries on manufacturing within the state but which employs
part of its capital in other than its strictly manufacturing opera-
tions is wholly exempt from taxation. To so hold would be
to offer a premium to such companies for transgressing their
charters, and to give them an advantage over others with which
they might come in competition outside of their legitimate
field of operations, which the legislature cannot be presumed
to have intended. The 20th section of the Act of June 30,
1885, would seem to be more sweeping than the proviso
under consideration. It was therein enacted " That the taxes
laid upon manufacturing corporations by and under the reve-
nue laws of this commonwealth, be and the same are hereby
abolished as to such corporations, and the laws under which
such taxes are laid and collected be and the same are hereby
repealed so far, and so far only as they apply to manufactur-
ing corporations." The difference between the two being that
the proviso of 1889 *ex vi termini* excludes from the exemption

manufacturing companies not exclusively organized as such, while the Act of 1885 by its letter relieves from the burden of taxation all manufacturing corporations whether they are exclusively such or not.   Under the latter it was held, in Commonwealth v. Lackawanna Iron & Coal Co., 129 Pa. 346, that a company whose principal business was the manufacturing of steel rails, but which had invested part of its capital in mining property, city lots, bonds and mortgages and store goods was not exempt from taxation on that part of its capital that was so invested otherwise than in its strictly manufacturing operations.   The reasons given in support of that judgment apply with equal force to the present case and need not be repeated here.   They require that the present defendant pay tax upon so much of its capital as is employed outside of its legitimate field of operations.

The judgment is reversed, and judgment is now entered in favor of the commonwealth and against the William Mann Company for the sum of three hundred and seventeen dollars and ninety-nine cents and costs.

