Pillsbury Mills, Inc., Appellant, *v.* Pittsburgh School District.
Pillsbury Mills, Inc., Appellant, *v.* Pittsburgh.

Argued March 20, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

370

*Fred C. Houston, Jr.,* with him *Houston & Houston,* for plaintiff.

*Edmund W. Ridall, Jr.,* Assistant School Solicitor, with him *Niles Anderson,* School Solicitor, *Regis C. Nairn,* Assistant City Solicitor, and *David W. Craig,* City Solicitor, for defendants.

*Norman J. Cowie,* with him *Pringle, Bredin & Martin,* and *Hall, Haywood, Patterson & Taylor,* for amicus curiae.

OPINION BY MR. JUSTICE COHEN, September 25, 1962:
We are once again confronted with the question of what activities constitute manufacturing within the meaning of the Act of 1947, June 25, P. L. 1145, as amended, 53 P.S. §6851,[1] and the Act of 1947, June 20,

---

[1] This act, commonly known as the Tax Anything Act, authorizes certain political subdivisions "in their discretion, by ordinance or resolution, for general revenue purposes, [to] levy, assess and collect . . . taxes . . . on persons, transactions, occupations, privi-

P. L. 745, as amended, 24 P.S. §§582.1 to 582.13.[2]

Under the authority of the above acts, the City of Pittsburgh and the school district, appellees herein, imposed deficiency Mercantile Tax assessments for the years 1953-1956 against appellant, Pillsbury Mills, Inc., for sales of its various flour products. These assessments were levied by the proper taxing authorities. Appellant claimed exemption from the taxes on the basis that it is a vendor of products of its own manufacture within the purview of the exemption provisions of the respective tax enabling acts. The County Court of Allegheny County found in favor of appellee taxing authorities and entered judgments in their favor. The propriety of these adjudications is presently before us.

---

leges, subjects and personal property within the limits of such political subdivisions, except that such local authorities shall not have authority by virtue of this act . . . (4) *to levy, assess and collect a tax on goods and articles manufactured in such political subdivision or on the by-products of manufacture,* or on minerals, timber, natural resources and farm products produced in such political subdivision or on the preparation or processing thereof for use or market, or on any privilege, act or transaction related to the business of manufacturing, the production, preparation or processing of minerals, timber and natural resources, or farm products, by manufacturers, by producers and by farmers with respect to the goods, articles and products of their own manufacture, production or growth, *or on any privilege, act or transaction relating to the business of processing by-products of manufacture,* or on the transportation, loading, unloading or dumping or storage of such goods, articles, products or by-products. . . ." (Emphasis supplied.)

[2] The Mercantile License Tax Act imposes an annual mercantile license tax upon "Wholesale . . . vendors or dealers in goods, wares and merchandise." (24 P.S. §582.4) " *'Dealer in, or vendor of, goods, wares and merchandise' shall not include* any mechanic who keeps a store or warehouse at his place of manufactory or workshop in which he sells only his own manufactures, *any person vending or disposing of articles of his own growth, produce or manufacture,* or any hawker or peddler licensed under any law of this Commonwealth." (24 P.S. §582.1(4)). (Emphasis supplied.)

According to the uncontroverted evidence of appellant, the milling operation involved in the present-day conversion of wheat germ to flour is an intricate technologically sophisticated process. It involves the transformation of literally hundreds of types of wheat into flours which are especially prepared for purchasers with greatly differing needs. The milling operation includes the grinding, blending and processing of the many types of wheat into flours of varying characteristics which will be used for countless purposes. Present day milling bears no relationship to the mortar and pestle operation of ancient times.

By the application of the principles enunciated in the *Atlantic Refining Company Case*, 398 Pa. 30, 156 A. 2d 855 (1959), wherein we held that the refining of oil constituted manufacturing, we now determine that sales by appellant of its various flour products produced within its mills constitutes the vending of products of appellant's own manufacture within the meaning and scope of the exemption provisions contained in the above two acts.

As we stated in the *Atlantic* case, "Our only concern here is whether or not the legislature intended to exclude [a particular activity] from these taxes. The purpose of the exclusion is an economic one in that it provides that Pennsylvania manufacturers should not be burdened with an additional tax on their products since such products have to compete with products of other states in an open market."

Appellees cite *Armour and Company v. Pittsburgh*, 363 Pa. 109, 69 A. 2d 405 (1949) as authority for the proposition that the milling of grain is not manufacturing but constitutes a mere processing operation not entitled to the exemptions under the acts. The reference to the "milling of grain" in the *Armour* case was pure dicta mentioned in a tangential manner and is in no way controlling upon us here. Once again, common

usage and custom plus the reason for the manufacturing exception leads us to the only logical conclusion that "manufacturing" includes the "milling of flour" as contemplated by the legislature in enacting the Acts of 1947.

Our determination above obviates the necessity of deciding the second question raised by these appeals: whether the School District of Pittsburgh is subject to a seven percent limitation in the collection of penalties on its Mercantile Tax. The holding of the lower court in this aspect of the litigation is vacated.

Judgments reversed.

Mr. Justice EAGEN dissents.