545 A.2d 468

Stewart Honeybee Products, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Stewart Honeybee Products, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued April 20, 1988, before Judges COLINS and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Lloyd R. Persun, Shearer, Mette, Evans & Woodside,* for petitioner.

*Michael A. Roman,* Deputy Attorney General, with him, *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE PALLADINO, August 8, 1988:

In this consolidated appeal, Stewart Honeybee Products, Inc. (Petitioner) appeals from an order and a resettlement of the Board of Finance and Revenue

which determined that Petitioner was not entitled to the manufacturing exemption from capital stock tax for the tax years ending June 30, 1980 and June 30, 1981, respectively. For the reasons set forth below, we affirm.

Petitioner is a Pennsylvania corporation engaged in the business of producing honey for human consumption. Petitioner obtains raw honey from its beehives and purchases raw honey from other beekeepers. When the raw honey arrives at Petitioner's plant, it is a crystalized solid and contains impurities or "foreign matter."[1] The raw honey does not meet Food and Drug Administration (FDA) or United States Department of Agriculture standards for human consumption.

At Petitioner's plant, the honey is tested to determine its color, flavor and moisture content. The honey is then partially liquified using steam unit heaters and drained into a stainless steel batch tank. The honey is then pumped into a mixing tank equipped with electric mixing paddles where it is blended. The blended honey is pasteurized by heating it in a steel plate heat exchanger. The pasteurized honey is then filtered through a series of filters. The filtered honey is pumped through a cooling exchanger. Finally, it is packaged by automatic packaging lines. The end result is honey which meets federal standards for human consumption.

The sole issue presented in this case is whether the production of honey meeting federal standards for human consumption from raw honey constitutes manufacturing for purposes of the manufacturing exemption from capital stock tax contained in section 602(a) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6,

---

[1] The foreign matter consists of pollen, colloids, bees' wax, honeycomb particles, wood slivers or chips, and bees' body parts including eyes, wings, legs, and knees.

*as amended,* 72 P.S. §7602(a).[2] In its effort to lessen the sting of taxes, Petitioner contends that its operations constitute manufacturing because the process used (1) employs special skill and elaborate equipment and (2) converts raw honey into a new product, namely honey fit for human consumption.

We note at the outset that the Code does not define the term "manufacturing". However, "manufacturing" has been judicially defined as the application of skill, science and labor to produce a new product which is different in form, quality and adaptability in use. *Kimberton Company v. Commonwealth,* 103 Pa. Commonwealth Ct. 408, 520 A.2d 904 (1987). Thus, in determining whether Petitioner qualifies for the manufacturing exemption from capital stock tax, our inquiry is twofold. We must determine (1) whether Petitioner's operations involve a high degree of skill, science and labor and (2) whether there has been a substantial change in the form, qualities and adaptability in use of the original honey so as to produce a new, different and useful product. *See Van Bennett Food Co., Inc. v. City of Reading,* 87 Pa. Commonwealth Ct. 30, 486 A.2d 1025 (1985).

## Skill, Science and Labor

Petitioner has described its operations in great detail. However, what sounds like a very complicated pro-

---

[2] Section 602(a) *imposes a capital stock tax and further provides that:*

except for the imposition of a seventy-five dollar ($75) minimum tax, the provisions of this section shall not apply to the taxation of the capital stock of entities organized for *manufacturing,* processing, research or development purposes, which is invested in and actually and exclusively employed in carrying on *manufacturing,* processing, research or development within the State. . . . (Emphasis added.)

cess is basically a very simple process. Petitioner simply takes raw honey, heats it and filters it.

Petitioner contends that this process requires special skill because it can only be done by using extensive machinery and equipment. This simply is not so. Although Petitioner uses extensive machinery and equipment, the same basic process can be performed in the home on a much smaller scale without any elaborate machinery or equipment.[3] Many people make a hobby out of keeping bees and producing their own honey. In rural areas, it is not uncommon to see home-prepared honey being sold at roadside stands. Thus, this case is no different from other cases in which operations capable of being performed in the home on a smaller scale have been held not to involve the high degree of skill, science and labor necessary to constitute manufacturing. *See Van Bennett; Commonwealth v. Berlo Vending Co.,* 415 Pa. 101, 202 A.2d 94 (1964).

### New, Different and Useful Product

Even if activity involves a high degree of skill, science and labor it does not constitute manufacturing unless it results in a new, different and useful product. *Ski Roundtop, Inc. v. Commonwealth,* 106 Pa. Commonwealth Ct. 608, 527 A.2d 600 (1987). In order for there to be a new and different product, there must be a substantial change in the form, quality and usefulness of the original material or substance. *Kimberton.* A mere superficial change in the original product does not constitute manufacturing. *Id.*

It is well established that the removal of impurities or foreign matter from a substance does not result in a

---

[3] For discussion as to how the small scale honey producer can liquify and filter honey see: J. Adams, Beekeeping the Gentle Craft 129-31 (1972); J. Eckert and F. Shaw, Beekeeping 277 (1960); and E. Sechrist, Amateur Beekeeping 91-93 (1955).

new and different product. *See Commonwealth v. Tetley Tea Company Inc.*, 421 Pa. 614, 220 A.2d 832 (1966) (separating tea from foreign matter does not result in a new and different product); *Commonwealth v. Sunbeam Water Co.*, 284 Pa. 180, 130 A. 405 (1925) (distillation of water to remove impurities does not result in a new and different product). Nor does the mere pasteurization[4] of a substance create a new and different product. *See Rieck-McJunkin Dairy Co. v. Pittsburgh School District*, 362 Pa. 13, 66 A.2d 295 (1949) (Pasteurization of milk to destroy harmful organisms does not create a new and different product).

In this case, the honey was pasteurized to destroy bacteria. The honey was also filtered to remove the foreign matter. The end product is honey which meets federal standards for human consumption. However, the end product is still honey. Petitioner starts with honey and ends with honey. The mere fact that honey is brought into compliance with federal standards for human consumption does not make it a new and different product. The honey produced in this case is similar to pasteurized milk. Milk is required by law to be pasteurized, but milk is milk whether pasteurized or unpasteurized. Similarly, honey is honey whether it meets federal standards or not.[5] We conclude that changing solid raw honey into liquid honey meeting federal standards for human consumption does not constitute manufacturing.

Because we conclude that the taxpayer has failed to produce a new and different product and to employ the

---

[4] Milk is pasteurized by heating it to a certain temperature and holding it at that temperature for a certain period of time. *Rieck-McJunkin Dairy*. In this case raw honey was pasteurized.

[5] Many honey connoisseurs prefer crystalized honey. J. Adams, *Beekeeping the Gentle Craft* 131 (1972). Also some honey experts maintain that honey should not be heated at all. *Id*. at 129.

requisite degree of skill, science and labor necessary to constitute manufacturing, we conclude that Petitioner is not entitled to the manufacturing exemption from capital stock tax. Accordingly, we affirm.

### ORDER

AND NOW, August 8, 1988, judgement is entered in favor of the Commonwealth and against Stewart Honeybee Products, Inc. in No. 1906 Commonwealth Docket 1983 in the amount of $1,515.85 plus appropriate interest and is entered in favor of the Commonwealth and against Stewart Honeybee Products, Inc. in No. 1907 Commonwealth Docket 1983 in the amount of $2,750.00 plus appropriate interest. The judgements shall be marked satisfied upon payment of the docket costs by Stewart Honeybee Products, Inc. and a credit in the amount of $188.00 shall be entered in favor of Stewart Honeybee Products, Inc. on the proper books and records of the Department of Revenue. This order shall become final unless exceptions are filed within 30 days from the date of this order.