553 A.2d 934

The KIMBERTON COMPANY, Appellant,

v.

COMMONWEALTH of Pennsylvania, Appellee.

Supreme Court of Pennsylvania.

Argued May 11, 1988.

Decided Feb. 3, 1989.

Reconsideration Denied April 17, 1989.

---

1. *Philadelphia School District v. Parent Metal Products, Inc.*, 402 Pa. 361, 367, 167 A.2d 257, 258 (1961).

Michael Kubacki, Joseph C. Bright, Jr., Philadelphia, for appellant.

Bartholomew J. DeLuca, Jr., Deputy Atty. Gen., for appellee.

Before NIX, C.J., LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS, and STOUT, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

The issue presented in this case, as in the companion case, *Ski Roundtop v. Commonwealth of Pennsylvania*, 520 Pa. 227, 553 A.2d 928, also decided this date, is whether the taxpayer, Kimberton Company, is entitled to the manufacturing exemption from the Capital Stock Tax Act of March 4, 1971, P.L. 6, No. 2, art. VI, § 62, 72 P.S. § 7602.

Kimberton filed timely tax reports for fiscal years 1982 and 1983, but the Department of Revenue disagreed with the taxpayer's valuation of its assets and increased Kimber-

ton's capital stock tax valuations. Kimberton appealed to the Board of Appeals with respect to the 1982 determination, and directly to the Board of Finance and Revenue with respect to the 1983 determination. Both appeals were denied and Kimberton appealed to Commonwealth Court, which consolidated the appeals and affirmed the prior determinations. 103 Pa.Cmwlth. 408, 520 A.2d 904. Kimberton appealed to this Court pursuant to Pa.R.A.P. 1102(a)(2) and 42 Pa.C.S. § (723)(b).

Kimberton's business consists of placing embroidered designs on ready-made sports clothing, mostly shirts. Kimberton does not embroider clothing for the general public, but only in response to orders given by customers for the creation of a particular embroidered design on specified types of clothing. After the the embroidery is stitched onto a ready-made piece of clothing, the embroidered piece is then sold to the customer.

In greater detail, Kimberton's operation works as follows: upon receiving the order and determining the design to be embroidered, Kimberton secures the required types of clothing to be embroidered from its own inventories, which it purchases ready-made from various wholesale suppliers. It then produces a Jacquard pattern which is used to control Kimberton's automatic sewing machines, and delivers the Jacquard pattern and the unembroidered clothing to the machine operator for production. The Jacquard pattern is a tape which contains instructions in the form of punched holes in a stiff cardboard material which controls the position of the material beneath the sewing machine heads. The average number of stitches per design is 3,000, with some designs requiring as many as 10,000, and the designs may be produced in one or many colors. Kimberton employs 210 persons and operates twenty-nine automatic sewing machines, each of which can produce an average of 200 pieces per day. When the plant is in full operation with a night shift, a daily rate of 7,200 pieces can be sustained.

The Commonwealth argues that Kimberton does not qualify as a manufacturer because it does not create a new and different product, and because there is no substantial trans-

formation of form, quality or adaptability of use. Further, the Commonwealth claims that Kimberton's work does not require a high degree of labor or skill, but rather that Kimberton does only the sort of thing that can be done at home. In sum, the Commonwealth states that Kimberton merely decorates an existing product, it does not create a new and different product.

Kimberton, on the other hand, argues that its product does meet all of the criteria for manufacturing: it applies skill and labor to a product which changes the material into a new, different and useful article. Further, it argues that changes wrought from thread to an insignia are not superficial. In *Ski Roundtop v. Commonwealth,* supra, we held that manufacturing is defined as "(1) the application of labor and skill (2) which changes a material (3) substantially (4) into a new, different and useful item." 520 Pa. at 231, 553 A.2d at 930. The issue in this case is whether Kimberton's embroidery meets these requirements.

Commonwealth Court concluded that if the item Kimberton produces is the embroidered insignia itself, rather than the insignia and the shirt together, what is produced is not a manufactured item because it cannot exist without the underlying garment. Thus, according to Commonwealth court, Kimberton's item is "not a 'product' at all." In the alternative, if Kimberton's product is an embroidered shirt, and not merely the embroidery itself, the taxpayer still does not qualify for an exemption, according to Commonwealth Court, because the product with which it ends (a shirt) is not different from the product with which it began (a shirt). In sum, Commonwealth Court concluded: "The finished product is altered only superficially in appearance and not at all in use. It is still worn in the same manner and still provides the same protection against the elements. We thus fail to see how the product is new and different."

Addressing the elements of manufacturing seriatim, we first consider whether the taxpayer utilizes skill and labor to create its product. Although the Commonwealth points out that embroidery can be done at home, we believe that the production of embroidered symbols by using highly

complex automated sewing machines capable of rapidly duplicating designs necessarily entails both skill and labor. As Kimberton cogently observes, even though a mechanic may be able to assemble an automobile in his garage, that does not mean that General Motors is not a manufacturer.

As to whether the material is substantially changed, we must first, as noted in *Ski Roundtop,* determine what materials are involved. Here, the materials which Kimberton combines to produce its product are threads of one or more colors and a ready-made garment. Thus, the question is whether the thread and the garment are combined in such a way as to produce a substantial change in the raw materials. To answer this question, we must know what substantial change means. Using ordinary language, we understand this question to be whether the original materials are, in some sense, significantly different than they were before they were combined into the item in question. Is the thread significantly different after being embroidered on the shirt than it was while on the spool and is the shirt significantly different with the embroidery than without it?

Although it is plain that the thread differs significantly from the embroidered design, the significance of the difference between the embroidered shirt and the unembroidered shirt is more elusive. On one hand, Kimberton's customers find the difference significant, for they order embroidered rather than unembroidered clothing. On the other hand, apart from aesthetic considerations, an embroidered shirt has the same function as an unembroidered one. We must decide, then, whether aesthetic differences are "significant" in the context of the capital stock tax.

In *Bindex Corp. v. City of Pittsburgh,* 504 Pa. 584, 475 A.2d 1320 (1984), cited in *Ski Roundtop,* supra, we stated that manufactured materials must be more than superficially changed from the original materials, and that "cosmetic" changes are not substantial. *See Ski Roundtop,* supra, 520 Pa. at 230–231, 553 A.2d at 930. Fundamentally, the change which Kimberton makes to its clothing is cosmetic, and it is not, therefore, "substantial" within the requirements of the capital stock tax. Were we to hold otherwise, any industry

which effects an aesthetic change, such as adding a coat of paint to a ready-made article, would qualify as a manufacturer. We do not believe that was intended.

AFFIRMED.*

NIX, C.J., joins the majority opinion and files a concurring opinion.

LARSEN, J., files a dissenting opinion which is joined by PAPADAKOS, J.

NIX, Chief Justice, concurring.

I join the opinion of the majority, based upon the views expressed in my concurring opinion in *Ski Roundtop, Inc. v. Commonwealth of Pennsylvania*, 520 Pa. 227, 553 A.2d 928 (1988).

LARSEN, Justice, dissenting.

I dissent.

The majority has concluded in this case that an embroidered insignia merely "effects an aesthetic change" to a ready-made garment, maj. op. at 936, and therefore, that appellant, The Kimberton Company, does not qualify for the manufacturing exemption under the Capital Stock Tax Act, 72 P.S. § 7602. I disagree.

It has long been the law of this Commonwealth that a taxpayer who engages in printing or lithographing is exempt from the capital stock tax as a manufacturing entity. *See, e.g., Commonwealth v. William Mann Co.*, 150 Pa. 64, 24 A. 601 (1892). A printer begins with paper and ends with paper. In light of the majority's ruling in the instant case, the ink which is applied to paper during the printing

---

* Kimberton's claim that it is constitutionally entitled to the manufacturing or processing exemption is also without merit. There is no equal protection violation in denying the exemption since Kimberton is treated as other non-manufacturing companies are treated; and the fact that reasonable minds can disagree about the applicability or meaning of certain terms in our caselaw does not mean that the definition of manufacturer is unconstitutionally vague. Kimberton is not entitled to the processing exemption because it does not fall within the definition of processing set forth by the legislature, 72 P.S. § 7601.

process would also merely "effect an aesthetic change." This is nonsense.

By the application of skill and labor to material, appellant substantially changes indistinguishable spools of thread into distinctive insignia based upon the designs submitted by appellant's customers. The attachment of the insignia to a ready-made shirt substantially changes that shirt in the same way that the application of ink to blank paper substantially changes that paper by making it a different and more valuable commodity.[1] What is the difference if one prints with thread on cloth or with ink on paper.

The contrary conclusion reached by the majority contravenes the purpose of the legislature in exempting manufacturers from the capital stock tax. *See Golden Triangle Broadcasting, Inc. v. City of Pittsburgh,* 483 Pa. 525, 397 A.2d 1147 (1979) (Larsen, J., dissenting) (legislative limits on taxation of manufacturers is intended to encourage the growth of manufacturing in this Commonwealth).

Accordingly, I would reverse the order of Commonwealth Court and remand for the recalculation of appellant's capital stock tax refund for the years 1982 and 1983.

PAPADAKOS, J., joins in this dissenting opinion.

---

1. In the words of the immortal Shakespeare: "the apparel oft proclaims the man." Hamlet, I, iii, 65.