579 A.2d 872

**STEWART HONEYBEE PRODUCTS, INC., Appellee,**

v.

**COMMONWEALTH of Pennsylvania, BOARD OF FINANCE AND REVENUE, Appellant.**

Supreme Court of Pennsylvania.

Argued May 10, 1990.

Decided Sept. 12, 1990.

Michael A. Roman, Sr. Deputy Atty. Gen., for appellant.

Lloyd R. Persun, Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

The Capital Stock Tax imposes a tax liability on certain business entities in Pennsylvania, but exempts, inter alia, manufacturers. Act of March 4, 1971, P.L. 6, No. 2, art. VI, § 602 as amended, 72 P.S. § 7602. Stewart Honeybee, the taxpayer herein, claimed that it was entitled to the manufacturing exemption for the years 1980 and 1981, and sought review before Commonwealth Court of the decisions of the Board of Finance and Revenue, which denied the manufacturing exemption. The cases for 1980 and 1981 were consolidated, and a panel of Commonwealth Court affirmed the Board's denial of the manufacturing exemption. 118 Pa.Cmwlth. 430, 545 A.2d 468 (1988). Stewart Honeybee then filed timely exceptions, and Commonwealth Court, en banc, sustained the taxpayer's exceptions and vacated the panel's decision. Judge Palladino, the author of the panel opinion, strongly dissented. 128 Pa.Cmwlth. 132, 562 A.2d 1015 (1989). The Commonwealth then took this direct appeal, pursuant to § 723(b) of the Judicial Code, 42 Pa.C.S. § 723(b), and Pa.R.A.P. 1101(a)(2), which provide for an appeal as of right from the final orders of the Commonwealth Court in cases seeking review of decisions of the Board of Finance and Revenue.

Our opinion in *Ski Roundtop v. Commonwealth*, 520 Pa. 227, 553 A.2d 928 (1989), which intervened between the two Commonwealth Court opinions, restated the requirements of qualification for the manufacturing exemption. The taxpayer in *Ski Roundtop* operated a ski resort and claimed that its snow-making activity on ski slopes was manufacturing within the meaning of section 602(a) of the Tax Reform Code of 1971, 72 P.S. § 7602(a), which exempts from taxation businesses "organized for manufacturing, processing, research or development purposes." We agreed that Ski Roundtop's snow-making activity was manufacturing, and we summarized the requirements for manufacturing activity as follows:

(1) the application of labor and skill (2) which changes a material (3) substantially (4) into a new, different and useful item.

520 Pa. at 231, 553 A.2d at 930. The question raised in this appeal is whether Stewart Honeybee's business activities fall within this definition of manufacturing.

Stewart Honeybee's business activity consists primarily in processing raw honey in such a way that it is transformed from a crystalline mass into a liquid which has been pasteurized and filtered to remove impurities. The honey, which Stewart largely purchases from outside suppliers, is also blended for flavor and is packaged in containers of various sizes from twelve ounce bottles to fifty-five gallon drums. The honey is processed in commercial equipment, some of which is the same as that used to pasteurize milk, and it is heated and cooled to various appropriate temperatures in order to kill harmful bacteria and in order to transform the honey into a liquid state.

The Commonwealth's primary contentions are that Stewart Honeybee is not eligible for the manufacturing exemption because its activities can be summarized as filtration and pasteurization, both of which have been determined not to constitute manufacturing. *Commonwealth v. Tetley Tea Co.*, 421 Pa. 614, 220 A.2d 832 (1966) (removal of impurities or foreign matter from a substance does not

result in a new and different product); *Commonwealth v. Sunbeam Water Co.*, 284 Pa. 180, 130 A. 405 (1925) (distillation of water to remove impurities does not result in a new and different product); *Rieck–McJunkin Dairy Co. v. Pittsburgh School District*, 362 Pa. 13, 66 A.2d 295 (1949) (pasteurization of milk does not create a new and different product).[1]

Stewart Honeybee, on the other hand, argues that raw untreated honey is not approved for human consumption by the Food and Drug Administration or the United States Department of Agriculture and that the physical and chemical changes to the honey which result from its treatment combined with the fact that its finished product is fit for human consumption require that its process be regarded as manufacturing.[2]

Philosophically, it might be argued, as an embellishment of Stewart Honeybee's position, that the application of heat and filtration to honey in this case is not fundamentally different from the application of pressurized air at certain temperatures to water in *Ski Roundtop:* in both cases a basic substance—honey in the case of Stewart Honeybee and water in the case of Ski Roundtop—is treated and re-formed in some fashion by the taxpayer. Although it is true that this Court determined in *Ski Roundtop* that both pressurized air and water were the raw materials used to produce snow, not water alone, 520 Pa. at 232–33, 553 A.2d at 931, the situation in the present case, according to this analysis, might be regarded as no different: heat and honey, not raw honey alone, could be seen as the original materials used to make liquid honey.

Even if we were to agree with this analysis, however, that would not cause us to regard Stewart Honeybee's

---

**1.** The Commonwealth is correct in its view that *Ski Roundtop* merely summarized existing law and that prior cases are, therefore, still authoritative.

**2.** Because the dispute in this case is focused on whether the processed honey is a new, different and useful product which is substantially changed from the original materials from which it is made, and because of our disposition of the case, we assume, without deciding, that the requisite skill and labor are involved in its production.

process as manufacturing within the meaning of section 602(a) of the Tax Reform Code of 1971, for the basic substance with which the taxpayer works, honey, is not *substantially* changed, and is not, therefore, a new, different and useful item. If honey is heated and filtered in order to make a liquid, that is not different in principle from washing, filtering or heating any food which is then consumed in its washed, filtered or heated form. But such treatment of food has never been characterized as manufacturing. *See Van Bennett Food Co. v. City of Reading,* 87 Pa.Cmwlth. 30, 486 A.2d 1025 (1985), and cases cited therein. Processed honey, like other foods which are washed, heated and filtered, may be more suitable for certain uses, but processed foods generally, including honey, remain essentially what they were before they were treated.[3] The water and pressurized air in the *Ski Roundtop* case, on the other hand, were substantially changed into a new material which had properties and uses which the water and air did not have prior to Ski Roundtop's treatment.[4] Stewart Honeybee's honey is not, therefore, "a new, different and useful item."

For the foregoing reasons, we conclude that the taxpayer has not demonstrated that it is entitled to the manufacturing exemption. The judgment of the Commonwealth Court is reversed.

CAPPY, J., files a concurring opinion which is joined by McDERMOTT, J.

LARSEN, J., files a dissenting opinion.

3. Both processed and raw honey are sold to consumers for use as sweeteners. In fact, some people prefer raw honey. As Judge Palladino observed in the first Stewart Honeybee case, many honey connoisseurs prefer honey in its crystallized form, and some experts maintain that honey should not be heated at all. 118 Pa.Cmwlth. 430, 435 n. 5, 545 A.2d 468, 470 n. 5 (1988).

4. *Compare Commonwealth v. Berlo Vending Co.,* 415 Pa. 101, 202 A.2d 94 (1964) (the transformation of popcorn kernels into greatly expanded kernels after mixing, heating and salting is a superficial, not a substantial change). Any changes in the filtered, heated honey, like the changes in popcorn are comparatively insubstantial; honey, after it is processed, remains a food that is used as a sweetener.

CAPPY, Justice, concurring.

I join in the result reached by the majority. I write separately to express my belief that the majority opinion is inconsistent with the opinion of this Court in *Ski Roundtop v. Commonwealth*, 520 Pa. 227, 553 A.2d 928 (1989).

In *Ski Roundtop*, the process by which pressurized air and water are combined to form snow was determined to be manufacturing. In the instant case, the process by which raw honey is filtered, pasteurized and packaged as commercially salable honey was determined not to be manufacturing. The rationale for distinguishing the two cases is that a new product—"snow"—is created by the process undertaken in *Ski Roundtop;* whereas, in the present case the appellant began and ended with the same product—"honey". This is a distinction without a difference.

The result reached in the present case is consistent with our prior decisions in *Rieck–McJunkin Dairy Co. v. Pittsburgh School District*, 362 Pa. 13, 66 A.2d 295 (1949), pasteurization of milk is not manufacturing; *Commonwealth v. American Ice*, 406 Pa. 322, 178 A.2d 768 (1966), cooling water to make ice is not manufacturing; *Commonwealth v. Tetley Tea Co., Inc.*, 421 Pa. 614, 220 A.2d 832 (1965), eliminating foreign matter from loose tea is not manufacturing. *Ski Roundtop*, is not consistent with the majority opinion herein, nor is it consistent with any of the prior decisions just cited.

*Ski Roundtop*, is an anomaly and should be overruled.

McDERMOTT, J., joins in concurring opinion.

LARSEN, Justice, dissenting.

I dissent, and in support thereof I adopt the erudite opinion authored by President Judge James Crumlish, Jr. of the Commonwealth Court, and liberally quote therefrom as follows:

The Pennsylvania Supreme Court recently refined the definition of manufacturing for purposes of capital stock tax exemption in *Ski Roundtop, Inc. v. Commonwealth*,

520 Pa. 227, 553 A.2d 928 (1989). Manufacturing is "(1) the application of labor and skill (2) which changes a material (3) substantially (4) into a new, different and useful item." *Id.*, 520 Pa. at 231, 553 A.2d at 930.[4]

Applying that test to these stipulations, we must first determine if the transformation of Honeybee's product is accomplished through the application of labor and skill. As the Supreme Court reiterated in *Ski Roundtop:*

> What is required is that the basic materials or goods be given a new identity by the current producer, one which can be easily traced to such producer. This identity must be the product of skill and labor. Skill involves education, learning, experience or knowledge one acquires in a particular business, trade or profession; while labor is the physical characteristics and methods utilized to employ one's skills. When labor is used in conjunction with skill to produce a different product than the original, one with a new identity, manufacturing has occurred.

*Ski Roundtop,* 520 Pa. at 231, 553 A.2d at 930 (citing *Bindex Corp. v. City of Pittsburgh,* 504 Pa. 584, 587–88, 475 A.2d 1320, 1322 (1984)).

Stewart Honeybee's five-stage process transforms a solid raw material into honey, a liquid, which is only *then* fit for human consumption under federal standards. The unrefined honey is first tested for moisture content. It is then placed over a stainless steel batch tank in a room where the temperature is raised to 160 degrees Fahrenheit. The raw honey then becomes partially liquified. Next, the honey is pumped into a mixing tank where it is blended with diatomaceous earth. In the fourth phase, the honey is placed in a heat exchanger which destroys bacteria and microorganisms and reduces moisture content. The pasteurized honey is then pumped through an elaborate filtration system which removes foreign matters (beeswax, wood chips, bee body parts, etc.). After filtration, the honey is pumped through a stainless steel plate cooling exchanger. Finally, the honey is transfer-

red to an automatic packaging line used to fill and cap plastic containers. (Stipulations of Fact (S.F.), paras. 19–33).

·This Court has held that the use of elaborate machinery constitutes an application of labor and skill. *Kirks Milk Products, Inc. v. Commonwealth*, 58 Commonwealth Ct. 230, 427 A.2d 688 (1981). Stewart Honeybee engages in extensive procedures utilizing high-tech machinery to convert unrefined honey into a consummable product; therefore, according to the stipulations, the process detailed above involves the application of labor and skill.

We next turn to whether a new, different and useful product emerges from Stewart Honeybee's process. In *Ski Roundtop,* the Supreme Court held that transforming water, a liquid, into snow, a solid, constituted "manufacturing." The Court emphasized that snow is a different product than water in its liquid form, which was not useful for skiing down a mountain. *Id.* 520 Pa. at 232, 553 A.2d at 931.

Similarly, unrefined honey has been found to be commercially unfeasible because of such undesirable characteristics as toxicity, flavor changes, and impurities. For example, solid honey cannot be spread on toast, mixed in pastry batter, or blended into coffee or tea. (S/F, paras. 27, 28.) Stewart Honeybee's conversion of the unrefined honey into a purified liquid constitutes a new, different and *useful* product because not only is it now fit for human consumption but it has undergone a substantial change in form.

The panel's conclusion in *Stewart Honeybee I*—that the process was not manufacturing because the equivalent process might be conducted at home ·on a smaller scale— understates the degree of technology and skill involved in making honey fit for human consumption. In comparison, a mechanic's potential ability to assemble an automobile in his garage would not preclude General Motors from receiving the manufacturing exemption. Moreover, we conclude that granting Stewart Honeybee the exemp-

tion more closely conforms to the legislature's purpose in exempting manufacturers from the capital stock tax. *See Kirks Milk* (legislative limits on taxation of manufacturers is intended to encourage the growth of manufacturing in this Commonwealth). We are convinced that the manufacturing exemption should encourage such capital formation and modernization.

---

4. The Supreme Court expressly stated that this formulation was a summary of prior precedent, relying specifically on the "well summarized" case law cited in *Bindex Corp. v. City of Pittsburgh,* 504 Pa. 584, 475 A.2d 1320 (1984). The *Ski Roundtop* opinion does not radically change existing law on this subject and, therefore, prior case law remains a valid guide as to what constitutes manufacturing. The following have been held to be examples of manufacturing: *Pillsbury Mills, Inc. v. Pittsburgh School District,* 408 Pa. 369, 184 A.2d 236 (1962) (milling of wheat into flour; *Atlantic Refining Co. Case,* 398 Pa. 30, 156 A.2d 855 (1959) (refining crude oil into motor oils, fuel oils, etc.); *Commonwealth v. Snyder's Bakery,* 348 Pa. 308, 35 A.2d 260 (1944) (converting raw potatoes into potato chips); *Kirks Milk Products, Inc. v. Commonwealth,* 58 Pa.Commonwealth Ct. 230, 427 A.2d 688 (1981) (converting liquid buttermilk and skim milk into powdered milk products.) The following have been held not to constitute manufacturing: *Kimberton Co. v. Commonwealth,* 520 Pa. 238, 553 A.2d 934 (1989) (placing custom embroidery on ready-made shirts); *Commonwealth v. Tetley Tea Co.,* 421 Pa. 614, 220 A.2d 832 (1966) (removing impurities from tea); *Rieck–McJunkin Dairy Co. v. Pittsburgh School District,* 362 Pa. 13, 66 A.2d 295 (1949) (pasteurization of milk); *Commonwealth v. Sunbeam Water Co.,* 284 Pa. 180, 130 A. 405 (1925) (distilling water to remove impurities.)

*Stewart Honeybee Products, Inc. v. Commonwealth,* 128 Pa.Commw. 132, 133–35, 562 A.2d 1015, 1016–18 (1989) (emphasis in original).

It is clear that as long as the majority insists upon pursuing a formulaic, rigid approach in these cases, we will defeat the purpose of the capital stock tax exemption which purpose is to encourage the growth of manufacturing in this Commonwealth. *See Kimberton Co. v. Commonwealth,* 520 A.2d 238, 553 A.2d 934 (1989) (Larsen, J., dissenting); *Ski Roundtop, Inc. v. Commonwealth,* 520 Pa.

227, 553 A.2d 928 (1989) (Larsen, J., concurring); *Golden Triangle Broadcasting, Inc. v. City of Pittsburgh,* 483 Pa. 525, 397 A.2d 1147 (1979) (Larsen, J., dissenting); *see also Commonwealth v. Northern Electric Light & Power Co.,* 145 Pa. 105, 22 A. 839 (1891) (exemption intended to bring and keep within state borders capital and labor to be used in the development of mineral wealth and the production of the staples of commerce).

Unfortunately, the majority is tripping over semantics and is basically concluding that honey is honey is honey is honey (to paraphrase writer Gertrude Stein—"Rose is a rose is a rose is a rose." *Sacred Emily,* 1913). Raw honey is a product with a tendency to crystallize that contains pollen, enzymes, amino acids, aromatic oils, flavoring compounds, vitamins, and minerals. These substances "exert a very great influence on the properties of honey," including its color, aroma, viscosity, and flavor. Root, *The ABC and XYZ of Bee Culture* at 350 (1947). These substances are removed by heating honey and by passing the honey under pressure through fine filters.[1] The product that emerges from the *manufacturing* process of appellee, Stewart Honeybee Products, Inc., is a bright, sparkling fluid with no suspended particulates, having a good appearance and a long shelf-life. To some experts, this product is no longer honey. Meyer, *The Beekeeper's Handbook* at 120–21 (1983). Anyone who has actually consumed raw honey can attest to the fact that the product sold in grocery stores with a "honey" label does not have the taste, texture, color, or aroma of raw honey.

Testing or blending or heating or cooling or filtering or pasteurizing, separately, have not been considered to be manufacturing. *Commonwealth v. Tetley Tea Co.,* 421 Pa. 614, 220 A.2d 832 (1966); *Rieck–McJunkin Dairy Co. v. Pittsburgh School District,* 362 Pa. 13, 66 A.2d 295 (1945). However, these processes, in the aggregate, unite to create a new and different product, herein. How the majority

---

1. This manufacturing process also removes harmful yeast and foreign matter from the raw honey.

writer can conclude that freezing water under pressure is manufacturing and that the processing of honey is not manufacturing is beyond my comprehension. *Ski Roundtop, Inc. v. Commonwealth,* 520 Pa. 227, 553 A.2d 928 (1989). Either we are going to *consistently* encourage manufacturing in this Commonwealth or we should hang out a sign that says, "MANUFACTURERS AND JOBS ARE NOT WELCOME IN THE COMMONWEALTH OF PENNSYLVANIA."

Accordingly, I would affirm the order of the Commonwealth Court reversing the order of the Department of Revenue, Board of Finance and Revenue.