628 A.2d 1220

### CITY OF PHILADELPHIA, DEPARTMENT OF REVENUE, Appellant,

v.

### TAX REVIEW BOARD OF the CITY OF PHILADELPHIA TO the USE OF SAWIN SYSTEMS, INC.

Commonwealth Court of Pennsylvania.

Argued May 11, 1993.

Decided July 9, 1993.

Joseph F. Lynch, Asst. City Sol., for appellant.
Berle M. Schiller, for appellee.

Before PALLADINO, FRIEDMAN and KELLEY, JJ.

PALLADINO, Judge.

City of Philadelphia (City) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) affirming the decision of the City's Tax Review Board (Board) that Sawin Systems, Inc. (Taxpayer) is a manufacturer for purposes of assessing Mercantile License Tax (MLT) and Business Privilege Tax (BPT) and that, to the extent that Taxpayer delivers its product to customers outside the city

limits, the receipts therefrom are excludable from its taxable receipts.  We affirm.

## I.   The Production Process

Taxpayer is in the business of producing a plastic film or negative called a "Velox" which is used by telephone directory publishers in the printing of advertisements such as those contained in the Yellow Pages.  In producing the directory pages, these publishers utilize computerized typesetting and software systems.  Part of the production process requires an ad velox, also described as a one piece camera-ready film positive of the ad, which is inserted or "pasted up" into the directory page by the publisher.

Taxpayer's clients primarily consist of advertising agencies.  These agencies forward to Taxpayer copy from their clients.  Taxpayer then converts this copy and any accompanying pictures or drawings into Velox which meets the graphic specifications of each telephone directory publisher.[1]

Specifically, Taxpayer's production process may be broken down as follows.  First, Taxpayer receives an ad copy layout sheet from its client by mail, fax or messenger.  Applying the appropriate graphic specifications to the sheet, Taxpayer produces and assembles the base ad components.  Various codes, indicating the typesetting parameters which are to be used, are then written onto the copy layout sheet.  Next, an operator keys into a terminal the typesetting parameters and the copy or text.

Through a series of keystrokes, this data is stored on a disk and is sent to the typesetter.  The typesetter images the text data onto a resin-coated film which is then developed through a rapid access process, thus producing the ad text in galley form.  Next, Taxpayer proofreads the ad text against the copy layout sheet to ensure accuracy.

At this point, all production pieces are assembled.  Using the copy layout sheet as a guide for positioning, the paste up

---

1.  These specifications include ad size, type of border, type, screens, halftones, solid black areas, color and touching tints.

artist produces a mechanical. The ad mechanical is then proofread, photographed onto lithographic film and processed.

The result is a negative which is subjected to a stripping process. A final contact print (a Velox) of the ad is made by contacting the negative to photographic paper and then developing it through a processor.

Last, a copy of the order and proofs of the finished product are delivered to the advertising agency or its clients, all of which are located outside of the city. The Velox and an insertion order are sent to the publisher for reproduction in its directory.

## II. Procedural History

On August 16, 1989, Sawin was audited by the City's Department of Revenue (Department) for the years 1984 through 1988. The audit revealed that Taxpayer had excluded from its tax base receipts from sales to customers located outside of the city. The Department assessed taxes, interest and penalties against Taxpayer.[2] This assessment was based on the Department's determination that Taxpayer was not a "manufacturer" but rather provided a service to its customers and therefore was required to include the receipts from all customers in its tax base.[3]

Taxpayer appealed the assessment to the Board which ruled in its favor. Specifically, the Board found that Velox is an

---

**2.** For the year 1984, the Department assessed $2,443.00 in MLT and $3,249.19 in interest and penalties. For the years 1985 through 1988, the Department assessed $38,218.00 in BPT and $31,169.53 in interest and penalties.

**3.** Taxable activity for MLT purposes includes, *inter alia*, any "manufacturing, commercial, service, financial or utility business or activity that is carried on in Philadelphia...." MLT Regulation § 103(a). Expressly excluded from taxation are those "[r]eceipts or the portion thereof attributable to any item of sale or lease involving the bona fide delivery of goods, commodities, wares, and merchandise to a location regularly maintained by the other party to the transaction outside the limits of the City of Philadelphia...." MLT Regulation § 303(9)(a).

Similarly, the BPT regulations contain provisions which assess tax on services performed in the city and exclude the receipts from goods or merchandise delivered to the buyer's location outside of the city. BPT Regulation §§ 103(a) and 303(1), (2)(b) and (2)(c).

article which has undergone a substantial transformation in form, quality and adaptability in use from the original material. The Board further found that Velox is a new article. On these bases, the Board concluded that Taxpayer is a manufacturer and, to the extent Taxpayer delivers the Velox to customers located outside of the city, the receipts therefrom are excludable from its taxable receipts.

City appealed to the trial court which, without taking additional evidence, affirmed the decision of the Board. City then appealed to this court.

## III. Discussion

The sole issue presented on appeal is whether Taxpayer is a "manufacturer" for purposes of assessing MLT and BPT.[4]

It is City's position that that Taxpayer is not a "manufacturer" as defined in the MLT and BPT ordinances and the regulations promulgated thereunder. Specifically, City asserts that Taxpayer provides a service to its customers, and consequently, all of its receipts must be included in its tax base.

In support of its position, City cites to various provisions of the Philadelphia Code (Code) in which "manufacturer" is defined. Pursuant to Section 19–1001(8) of the Code, a "manufacturer" for MLT purposes is "[a]ny person who sells goods, wares, and merchandise of his own growth or production." Phila.Code § 19–1001(8). Similarly, Section 19–2601 of the Code defines "manufacturer" for BPT purposes as "[a] person whose business is the sale of goods, commodities, wares or

4. Our scope of review where, as here, the trial court takes no additional evidence is the same as that of the trial court. *Kujawa v. City of Williamsport*, 67 Pa.Commonwealth Ct. 38, 445 A.2d 1348 (1982). Pursuant to Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b), the trial court's scope of review was limited to a determination of whether constitutional rights were violated, an error of law was committed or whether the Board's findings of fact were not supported by substantial evidence.

merchandise of its own manufacture, growth or production." Phila.Code § 19–2601.[5]

City also cites to Section 101(O) of the BPT regulations which defines "manufacture" as:

[t]he application of skill, science and labor by which raw materials are changed into a new, different and useful article as a result of having undergone a substantial transformation in form, qualities and adaptability in use. The term is limited to that of its common meaning.

BPT Regulation § 101(O). We note that this definition mirrors the language employed in a long line of Pennsylvania cases in which the meaning of "manufacture" evolved. Specifically, our Supreme Court summarized the requirements for manufacturing activity as (1) the application of labor and skill (2) which changes a material (3) substantially (4) into a new, different and useful item. *Stewart Honeybee Products, Inc. v. Board of Finance and Revenue*, 525 Pa. 222, 579 A.2d 872 (1990).

Contrary to City's characterization of Taxpayer's activities as a mere "assembly process", City's brief at 9, the record reveals that Taxpayer does more than provide a format for a telephone directory advertisement. Although City asserts that the final product is the directory of which the printer is the manufacturer, we find that the directory is not the only product which is manufactured. In order to arrive at the finished telephone directory, Taxpayer must first produce the Velox.

When applying the *Stewart Honeybee* standard to the present appeal, we conclude that Taxpayer's production of Velox indeed constitutes a manufacturing activity. Perhaps, Taxpayer summarizes its activities best. In its brief, Taxpayer describes its process as follows: "Through skill, ingenuity, and

**5.** Section 101 of the MLT regulations defines "manufacturer" as "[a]ny person who sells goods, wares, commodities and merchandise of his own growth or production." MLT Regulation § 101. Section 101(P) of the BPT regulations defines the term as "[a] person whose business consists in part or in its entirety of the sale of goods, commodities, wares, or merchandise of its own manufacture, growth or production." BPT Regulation § 101(P).

advanced technology, [Taxpayer] takes the raw 'copy' (*i.e.* merely an idea) from the advertising agency and subjects it to various production processes that substantially transform a mere idea into a new, different, and useful finished product, from which advertisements in the Yellow Pages are directly produced." Taxpayer's brief at 19–20.

We note that Taxpayer does more than make superficial changes to the ad design. Taxpayer begins with raw materials, *e.g.*, chemicals, paper, film and an ad design, and ends with a Velox. It is the Velox, a one piece camera-ready film positive of the ad, which enables the publisher to produce an advertisement in the telephone directory.

Relying on *Tucker v. City of Pittsburgh*, 504 Pa. 580, 475 A.2d 1318 (1984) (commercial illustration does not constitute manufacturing), City further asserts that Taxpayer's contribution is one of creativity, imagination and skill and is more akin to that of a painter or photographer than to that of a printer or manufacturer of cameras. However, we believe that City oversimplifies the activities of Taxpayer when it asserts that "[a]t most, [Taxpayer's] activities could be analogized to those of a photographer as someone who deals with film which is basically what [Taxpayer] calls a 'velox'." City's brief at 11. Moreover, we note that it is the advertising agency, not Taxpayer, which makes a creative contribution to the ad. Contrary to City's assertions, Taxpayer does not merely provide the services of a graphic artist.[6]

Based upon the foregoing analysis, we conclude that Taxpayer is a "manufacturer" for purposes of assessing MLT and BPT and that, to the extent that Taxpayer delivers its product to customers outside the city limits, the receipts therefrom are

6. Last, City asserts that "[the Board] seemed fascinated by the 'advanced technology' used by [Taxpayer] in the services it furnishes to its customers." City's brief at 14 (citations omitted). While it is true that the use of intricate machinery by specially trained workers, by itself, is not determinative of whether the processing of a product rises to the level of manufacturing, *Commonwealth v. Deitch Co.*, 449 Pa. 88, 295 A.2d 834 (1972), our review of the Board's decision indicates that the Board did not rely on this factor alone.

excludable from its taxable receipts. Accordingly, we affirm the order of the trial court.

## ORDER

AND NOW, July 9, 1993, the order of the Court of Common Pleas of Philadelphia County is affirmed.